# IN THE COURT OF APPEALS OF IOWA

No. 18-1669
Filed November 21, 2018

**IN THE INTEREST OF E.B., D.B., and E.B.,**
**Minor Children,**

**J.P, Mother,**
    Appellant,

**M.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother and father separately appeal the termination of their parental rights to three children. **AFFIRMED ON BOTH APPEALS.**

John W. Harris of McCrindle Law Office, Waterloo, for appellant mother.

Christina M. Shriver, Waterloo, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Melissa A. Anderson-Seeber of Waterloo Juvenile Public Defender's Office, Waterloo, guardian ad litem for minor children.

Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DANILSON, Chief Judge.**

The mother and father of three children separately appeal from the termination of their parental rights. Instability, domestic violence, lack of consistent and diligent effort in participating in the services provided as well as continued unresolved needs have been the hallmarks of these parents. Upon our de novo review, we find clear and convincing evidence supports the termination of both parents' parental rights and affirm.

## I.     Background Facts and Proceedings.

This case involves three children: E.B., born in March 2007; D.B., born in April 2012; and Et.B.[1], born in July 2016.

The Iowa Department of Human Services (DHS) became involved with the family in February 2017, following a report the father attacked the mother while they were in a vehicle with the children present. The father punched the mother and cut her on the head with a knife. E.B. reported the father yelled "watch your momma die" and the father made comments about killing himself. When police arrived, the father cut his own throat but failed to cause a serious injury.

Because of the attack, the father was arrested on domestic-abuse and child-endangerment charges. A no-contact order (NCO) was issued between the mother and father as well as between the father and the three children. During the following month, the mother took the children to visit the father multiple times while the NCO was still in effect. The mother repeatedly lied to DHS when confronted

---

[1] We refer to the younger E.B. as "Et.B." to avoid confusion with the older sibling.

about her violations of the NCO. Because the mother failed to abide by the safety plan and placed the children in danger, the children were removed in April 2017. Additional relevant facts will be discussed below.

In September 2018, the juvenile court entered an order terminating the parental rights of the mother and father. The juvenile court terminated both parents' parental rights to E.B. and D.B. pursuant to section 232.116(1)(f) (2018). Their parental rights to Et.B. were terminated pursuant to section 232.116(1)(h). Both parents separately appeal.

## II.      Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *See id.* at 776.

## III.      Analysis.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interests framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interests framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

*A. The Mother's Claims.*

The mother contends the juvenile court erred in finding the children could not be returned to her care at the time of the termination hearing, or the court should have deferred permanency up to six months in order to allow her to extend her continued sobriety, solidify her employment and housing, and demonstrate her commitment to ending her relationship with the children's father. The mother also contends the district court erred in terminating her parental rights as to E.B. because there is no evidence in the record E.B. was given the opportunity to object to the termination.

> *1. The children could not be returned to the mother's care at the time of the termination hearing.*

Iowa Code section 232.116(1)(f) provides that the court may terminate a parent's parental rights if the State proves by clear and convincing evidence that the child (1) is four years of age or older; (2) has been adjudicated a child in need of assistance (CINA); (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Under section 232.116(1)(h), the court may terminate parental rights if the court finds that the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days;

and (4) cannot be returned to the custody of the parent at the time of the termination hearing.

The mother does not contest the first three requirements of sections (f) and (h). The mother contests only the fourth requirement of the respective sections—that the children could not have been returned to the mother's custody at the time of the termination hearing.

Since 2017, the mother and father have sometimes resided together in the father's camper. The mother has a history of drug abuse and mental-health concerns. The mother was sometimes cooperative and compliant in drug and mental-health treatment, but at other times she was resistant. The mother admitted using methamphetamine three weeks before the February 2017 domestic assault, but she provided negative drug tests through October 2017. The mother refused a drug test scheduled on a Sunday in November, asserting it violated her religious beliefs. The mother eventually admitted she put methamphetamine in her coffee in November 2017, intending to drink it, but gave it to the father so he would fail his drug test. The couple also refused to participate in parenting classes in November, and the mother asserted her refusal was based on a conflict with her work schedule.

Although the mother participated in domestic-violence counseling, she downplayed the significance of domestic violence in her relationship with the father and was unaware of the effects the domestic violence was having on her children. At times, the mother denied any domestic violence had occurred. In October 2017, the couple had an argument during which the mother damaged property in the camper. The mother and father stopped attending couple's counseling in October

2017, and it was reported the mother was separating from the father. In December 2017, the mother attempted suicide and subsequently refused to sign information releases to provide DHS information about her condition.

Following the suicide attempt, the mother actively participated in substance-abuse and mental-health counseling. She was compliant with medical tests and had no positive drug tests. In January 2018, the father was sentenced to a month in jail due to a probation violation. While the father was in jail, the mother moved back into his camper. Although the couple indicated they did not intend to continue their relationship or reside together, upon his release from jail the father resumed living with the mother.

In March 2018, the mother was terminated from her employment. In May 2018, the father was again arrested for domestic-abuse assault against the mother. Reportedly, the mother hit the father in the head with a laptop computer then destroyed the computer. The father also claimed the mother hit him with a hammer, broke the TV, and shattered a tea set. The mother admitted to smashing the computer but claimed it was previously broken by the father, and she reported the father hit her in the head with a baseball bat.

At the time of the August 2018 termination hearing, the mother testified she had recently secured employment. The mother has not had stable housing since November 2017. As of the day before the hearing, the mother was residing with family. The mother testified the day before the termination hearing she "reached out to a few resources . . . about housing." We view the mother's recent participation in services, employment, and attempts to secure housing as eleventh-hour attempts to prevent termination of her parental rights. *See In re D.M.*, 516

N.W.2d 888, 891 (Iowa 1994). "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Despite more than a year of services, the mother has not meaningfully participated in domestic-violence counseling. She has not participated in parenting classes. She has problems maintaining emotional stability. She has not shown an ability to put the needs of her children above her own.

Upon our de novo review, we find by clear and convincing evidence the children could not be returned to the mother's custody at the time of termination.

> *2. The need for removal would not cease to exist after a six-month extension.*

The mother alternatively contends she should be afforded an additional six months.

Iowa Code section 232.104(2)(b) sets forth the option of continuing placement for six months after a permanency hearing, allowing the court to

> [e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension. *Id.* The mother contends the need for removal will no longer exist at the end of a six-month extension based upon her new employment, her willingness

to terminate all relations with the father, and her hope to obtain acceptable housing in the near future. The juvenile court was unable to make such a finding.

Specifically, the juvenile court had "little belief that [the mother] will be able to resist the opportunity to reconcile with [the father] as soon as he is released from custody in the future." The juvenile court also found "[the mother] cannot be believed given her prior lies offered to the court." The court noted the mother's "co-dependence on [the father] would overpower any of her individual abilities to care for the children." The court concluded it was highly likely the mother would resume a relationship with the father, and that would be the worst result for the children.

From our de novo review of the record, we agree with the juvenile court, and are unable to make a finding the need for removal would no longer exist after a six-month extension.

*3. Whether E.B. was afforded the opportunity to object to termination.*

The mother lastly contends the district court erred in terminating her parental rights as to E.B. because there is no evidence in the record E.B. was given the opportunity to object to the termination. We agree with the State this issue was not raised in the juvenile court proceeding and is thus not preserved for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (noting "the general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases").

Even if error were preserved, it is not the State's or guardian ad litem's burden to prove exceptions to termination apply. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (holding once the State has proven a ground for termination, the

parent resisting termination bears the burden to establish an exception to termination). The mother had the opportunity at the termination hearing to present evidence and call witnesses to prove the exception but did not do so. The court did not err in concluding no exception applied.

Upon our de novo review, we conclude there is clear and convincing evidence supporting termination of the mother's parental rights under section 232.116(1)(f) as to E.B. and D.B. and paragraph (h) as to Et.B. We also agree with the juvenile court that no exception to termination pursuant to Iowa Code section 232.116(3) applies, and termination is in the children's best interests. Accordingly we affirm termination of the mother's parental rights.

*B. The Father's Claims.*

The father also contends the juvenile court erred in concluding the children could not be returned to his custody at the time of the termination hearing and in denying the father's request that permanency be deferred for up to six months.

At the time of the termination hearing, the father was incarcerated. It was not known when the father would be released, but the father was facing revocation of probation and new charges. Upon our de novo review, we find by clear and convincing evidence the children could not be returned to the father's custody at the time of termination.

As for the father's request that permanency be deferred up to six months, we are unable to conclude there would no longer be a need for removal after an extension. The father claims, despite his initial reluctance, that he had been compliant with requested services and progressed to semi-supervised visitation. The record does not support the father's claims. In reality, the father has refused

to participate in substance-abuse treatment in any significant way and has continued to have positive drug tests. The father has taken no responsibility for violence in his relationship with the mother and has denied that he hits women despite pleading guilty to a domestic-abuse-assault charge. Although the family had progressed to semi-supervised visitation, visitation reverted to being fully supervised after a series of incidents during which the father: rambled about individuals coming to vandalize the camper, threatened a DHS worker, accused the children of conspiring with the mother to make the father look crazy, tested positive for methamphetamine, and assaulted the mother. Over the course of two weekends, the police were called at least five times, including for one incident where the father assaulted the mother and the mother attempted to run the father over with a vehicle.

Despite more than a year of services, the father has shown little to no progress on his substance-abuse or domestic-violence issues. When some progress was made, it could not be maintained. Even assuming the father will not be incarcerated six months after the termination hearing, there is no support in the record that the need for removal would no longer exist after six months.

Upon our de novo review, we conclude there is clear and convincing evidence supporting termination of the father's parental rights under section 232.116(1)(f) as to E.B. and D.B. and paragraph (h) as to Et.B. We also agree with the juvenile court that no exception to termination pursuant to Iowa Code section 232.116(3) applies, and termination is in the children's best interests. Accordingly we affirm termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**